### 38119.   McCOY GROCERY COMPANY v. TRAVELERS INDEMNITY COMPANY.

NICHOLS, Judge. 1.   " 'When a court passes upon a motion for a non-suit it decides only one question, that is, do the allegations and the proof correspond?   In sustaining such a motion the court does not hold that the plaintiff is not entitled, under the law, to recover on the facts alleged; neither does the overruling of the motion decide that the plaintiff is entitled under the law to recover.   The right to recover under the facts alleged is not involved in the decision of such a motion.   If a plaintiff "proves his case as laid," he is entitled to prevail as against a nonsuit; but it by no means follows from this that he is entitled to recover on the facts "as laid." *Kelly v. Strouse,* 116 *Ga.* 872, 883 (43 S. E. 280).   See also *Flewellen v. Flewellen,* 114 *Ga.* 403 (40 S. E. 301); *Barge v. Robinson,* 115 *Ga.* 41 (41 S. E. 258); *McCandless v. Conley,* 115 *Ga.* 48 (41 S. E. 256)." *Gray v. Schlapp,* 92 *Ga. App.* 261 (88 S. E. 2d 536).

2. The plaintiff in this case sought to recover, under a policy of burglary insurance, a copy of which is attached to the petition, issued by the defendant insurance company for "the felonious abstraction of insured property from within a vault or safe described in the declarations and located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all *combination locks thereon,* provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives . . . upon the exterior of all of said doors of such vault or safe . . . if entry is made through such doors . . ." (Emphasis ours).   The plaintiff introduced evidence to show there had been a felonious abstraction of funds from within a safe located within the plaintiff's premises by some person making felonious en-

try into such safe; that such felonious entry into said safe was made when all the doors thereof were duly closed and locked by all *combination locks thereon*; that there were visible marks of actual force and violence made by tools of some description and covered by the policy upon the exterior door to the safe, which door was the only door, under the evidence, upon which there was a *combination lock*, as contemplated by the policy.

3. Whether or not there was any evidence of the insured's liability for the physical damage done to the building in the alleged wrongful entry to same, and for which the plaintiff seeks to recover under the policy, need not be considered here since there was sufficient evidence to go to the jury on the question of the defendant's liability for the money allegedly stolen from the safe.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle and Frankum, JJ., concur. Felton, C. J., and Bell, J., dissent.*

DECIDED APRIL 27, 1960—REHEARING DENIED

MAY 12, 1960.

*James H. Fort,* for plaintiff in error.

*Hatcher, Smith, Stubbs & Rothschild, Albert W. Stubbs,* contra.

FELTON, Chief Judge, dissenting. The plaintiff alleged in his amended petition that entry to the safe was made by actual force and violence of which there were visible marks upon the exterior of all doors of such safe. While there is evidence of visible marks on certain portions of the safe, in my opinion the plaintiff has not proved that entry to the safe was made by actual force and violence and has therefore failed to prove his case as laid. The sum and substance of the evidence is that on the evening of May 2, 1959, the inner and outer doors of the safe were locked by an employee of the plaintiff who left the premises about 7:30 p.m.; that when the store was opened the next morning the safe had been moved 12 to 18 inches from the wall; there was a small dent or scratch on the dial which is located on the outside door; the inner door was open and the key to it

was broken off; that the knob on the outside was absolutely clean before this occasion and had no scratches on it at all. There were also some scratches around the hinges and the edge of the outer door. The plaintiff's manager had the combination to the safe changed immediately after this occurrence and about a week or ten days later he noticed that the knob did not twirl freely as it had done previously and that there was a sort of bind in it.

While there is no precise precedent in Georgia, a number of decisions from other jurisdictions support the proposition that the mere presence of marks or scratches upon a safe which has been opened in some manner is not sufficient, in and of itself, to satisfy the policy provisions requiring the showing of an entry by actual force and violence. See in this connection Newark Dance Palace v. Maryland Cas. Co., 125 Misc. Rep. 869 (212 N.Y.S. 286); Brill v. Metropolitan Surety Co., 113 N.Y.S. 476; Wagner v. London Guar. Co., 86 Pa. Super. Ct. 542; Grayson v. Maryland Cas. Co., 110 Neb. 354 (160 N.W. 85); Inglis v. General Cas. Co., 211 Ore. 116 (316 P. 2d 546). We are not called upon to decide in this case the quantum of evidence necessary to make a jury question on this point, except as to whether the evidence set forth above makes out a prima facia case of entry by actual force and violence as alleged in the petition, so as to withstand the motion for a nonsuit. Code § 110-310.

The plaintiff's evidence is circumstantial, and in order to withstand a nonsuit, it not only must reasonably tend to establish the theory of the case made by the petition, but must also preponderate to that theory rather than to any other reasonable hypothesis. *Callaway* v. *Hall*, 58 *Ga. App.* 795 (199 S.E. 899). While the evidence of marks and scratches is consistent with the theory of entry by actual force and violence, as alleged, it certainly does not preponderate towards that theory rather than to any other, particularly in the absence of evidence indicating that the outside lock was damaged in any manner. There is nothing to show that the lock was not in proper working order when the combination was changed on May 3rd by a locksmith. The probability that a successful opening of the safe by means of manipulating the combination was a result of violence is too

remote to be considered, especially when the violence did not damage the combination or lock. To my mind, a construction of the policy to the effect that coverage applies where there are signs of violence on the combination knob whether the violence effected or helped effect the entrance into the safe is a most far-fetched and unreasonable interpretation, if such is given in this case expressly or impliedly. The petition alleges that in making the entry to the building the burglars caused damage to the roof in the amount of $45.52. The plaintiff's president testified that the roof had been repaired by two companies and "I believe the total cost of that repair was forty-five dollars and some cents. The cost of that repair has not been paid for. It was billed to us." Even if this evidence is sufficient to support this allegation of damage the policy specifically covers "damage to the premises by such safe burglarly or attempt thereat, provided . . . the insured is owner thereof or is liable for such damage." There is certainly no evidence that the plaintiff was the owner of the premises or was for any reason legally liable for this damage, despite the fact that repair charges were billed to it.

The plaintiff's evidence is of the weakest kind and in my opinion is manifestly insufficient to establish a prima facie case of entry by force and violence or for recoverable damage to the premises as laid in the petition. I therefore think that the court did not err in granting defendant's motion for a nonsuit.

Bell, J., concurs in the foregoing dissent.

### On Motion for Rehearing.

On motion for rehearing counsel for the defendant in error complains that the court overlooked (b) "The fact that there was no proof whatsoever of a visible mark on the exterior door of the inner compartment which was designed to be opened by a key." The plaintiff in error's witness Joe Young testified: "The bottom of the safe was open and there was no inside door on that, I meant it was just like a cabinet—and then the bottom part is open. I mean that you can put a big object in such as a register pan, but the upper part had compartments in it where you might keep papers or something and lock. *You didn't have to open anything but the big door to put the drawers in the safe.*"

Earlier in the testimony of the same witness is found the following: "As the cash drawers were pulled out of the register, they were stacked up and stacked in the bottom of the safe—each register's change." The plaintiff in error's witness Mrs. Betty Johnson testified in part as follows: "I put $3,272.48 in the safe. I had not counted that, but the reason I didn't count it is because the drawers were checked out and then more money was taken into the drawers after I had checked them out but those drawers were just put into the safe."

Placing a reasonable construction on the above testimony, the conclusion is inescapable that the only door necessary to be opened in order to reach the money that was abstracted or taken, if it was abstracted or taken from the safe, as contended by the plaintiff in error, was the big swinging outside door to the safe and upon which was located the combination lock. There was and is evidence in the record of visible marks on that door.

*Rehearing denied.*